UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:16-CV-81992-KAM

BRANDON LEIDEL, individually, and on behalf of All Others Similarly Situated; and JAMES D. SALLAH, ESQ., as Receiver/Corporate Monitor of Project Investors, Inc. d/b/a Cryptsy,

    Plaintiffs

  v.

COINBASE, INC., a Delaware corporation d/b/a Global Digital Asset Exchange (GDAX),

    Defendants.

## REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendant Coinbase, Inc. ("Coinbase") respectfully submits this reply in support of its motion for an order (1) compelling Plaintiff Brandon Leidel ("Plaintiff") to arbitrate the claims in the Complaint and (2) staying any further litigation in this action pending the final resolution of the arbitration.

In its motion (Dkt. 18), Coinbase moved to compel arbitration of the claims of *both* Mr. Leidel *and* the Receiver of Cryptsy (James D. Sallah). In the interim, however, Plaintiffs' counsel conceded that the claims of the Receiver are subject to arbitration. The Receiver has agreed to dismiss his litigation claims, and the Court has granted the stipulation of the parties for dismissal of the Receiver's claims. Dkt. 24, 30. Thus, what remains for the Court to decide is whether the claims of Mr. Leidel are arbitrable and/or whether litigation of those claims should be stayed.

---

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130 (305) 379-0400

First, the claims of Mr. Leidel, a Cryptsy account holder, are subject to arbitration. As set forth in the complaint, Mr. Leidel's claims are essentially identical to those of the Receiver, and they are entirely derivative of the Receiver's claims: the complaint alleges that (1) Cryptsy and Coinbase entered into a contractual relationship; (2) that the contractual relationship between Coinbase and Cryptsy obligated Coinbase (under various theories set forth in the complaint) to monitor and/or to exercise control over the activities of Cryptsy; and (3) that Coinbase somehow breached those obligations, to the detriment of Cryptsy – and, derivatively, to the detriment of Mr. Leidel, as a Cryptsy account holder. Under the doctrine of estoppel, Mr. Leidel cannot engage in "cherry picking": he cannot affirm those elements of the underlying contract that are fundamental to his claims (the creation of the relationship between Cryptsy and Coinbase) while at the same time repudiating other elements of the contract that are not to his liking (the arbitration clause).

Second, even if this Court determines that some or all of Mr. Leidel's claims are not subject to arbitration, the litigation of his claims should be stayed. As noted, and as set forth in the Complaint, the claims of the Receiver and Mr. Leidel are essentially identical. Both sets of claims are based entirely upon the very same underlying facts and the very same alleged breaches of the very same alleged duties. The arbitration will likely resolve, or at the very least substantially narrow, the issues (if any) that must be litigated. Accordingly, in the interests of economy and preserving judicial resources, the Court should exercise its discretion to stay any non-arbitrable claims pending the resolution of arbitration.

**ARGUMENT**

I.   **ALL OF PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION UNDER THE PRINCIPLE OF EQUITABLE ESTOPPEL.**

In his Opposition, Plaintiff acknowledges (as he must) that under the doctrine of estoppel, a non-signatory can be compelled to comply with a contractual arbitration clause. Opposition ("Opp.") (Dkt. 22) at 5; *see also, e.g., BDO Seidman, LLP. V. Bee*, 970 So. 2d 869, 874-75 (Fla. 4th Dist. Ct. App. 2007). As the District Court of Appeal has explained, a non-signatory plaintiff "may not rely on a contract to establish his claims while avoiding his obligation under the contract to arbitrate such claims." *Id.* at 875; *see also Rowe v. Exline*, 153 Cal. App. 4th 1276, 1287 (applying same principle under California law).

That is precisely the case here. Plaintiff is relying on the contract between Cryptsy and Coinbase, and all of his claims depend entirely upon the existence of that contract: the duties that Plaintiff alleges that Coinbase assumed, and then allegedly breached, arose (if at all) out of and as a result of the contractual relationship between Cryptsy and Coinbase. Specifically, throughout the Complaint (in both the general allegations and the specific counts), Plaintiff repeatedly alleges that Coinbase had a duty to perform anti-money laundering and "know your customer" monitoring procedures for Cryptsy under federal law *because Cryptsy was a Coinbase account holder. See, e.g.,* Complaint, ¶¶ 48, 59-70, 76-80, 93, 96, 155, 160, 162-63, 165, 174; *see also* Opp. at 3-4 (arguing that Plaintiff's claims are based upon Coinbase's alleged failure "to perform adequate 'anti-money laundering' and 'know your client" (combined as 'AML/KYC') procedures"). Whatever else may be true, even Plaintiff must concede that in the absence of the Cryptsy-Coinbase contract, Cryptsy would never have become a Coinbase account holder, and thus Coinbase would never have had any duty at all to monitor and/or to exercise control over Cryptsy. Thus, because Plaintiff would have no claims if there had never been a Cryptsy-

Coinbase contract, he must rely on that contract to establish his claims, and Plaintiff is bound by the arbitration clause in that contract under the principles of estoppel.

In his Opposition, Plaintiff makes two main arguments in response to the motion to compel arbitration. Neither is sufficient to defeat this motion.

First, Plaintiff argues that he is not bound to arbitrate because he is asserting tort claims, and not a claim for breach of contract. Opp. at 1, 6-8. But tort claims, as well as contract claims, may be subject to arbitration. *See*, *e.g.*, *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996) ("The law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause."); *see also Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (ordering arbitration of statutory claims). Ultimately, whether a claim falls within the scope of an arbitration clause depends on the nature of the factual allegations and the scope of the arbitration clause – an issue discussed below (and one that the arbitrator, and not this Court, should decide) – and not on whether the complaint uses a "tort" or "contract" label. *Gregory*, 83 F.3d at 384; *see also Int'l Yacht Bureau, Inc. v. Int'l Registries, Inc.*, No. 13-60947-CIV, 2014 WL 815292, at *3 (S.D. Fla. Mar. 3, 2014) (Marra, J.) (citing *id.*). Here, as set forth in more detail below, Plaintiff's claims are all within the scope of the arbitration clause – and, indeed, Plaintiff's counsel has conceded that claims asserted by the Receiver based upon the same facts are within the scope of the same arbitration clause in the same contract.

Plaintiff argues that *Seth v. Rajagopalan*, No. 12-CIV-61040, 2013 WL 11927712 (S.D. Fla. Jan. 25, 2013) supports his position. Opp. at 6-7. It does not. To the contrary, in *Seth*, Magistrate Judge Brannon noted the distinction between (a) obligations that exist in the absence of a contract and are generally owed to all others and (b) obligations that exist only because of

the relationship created by a contract, and thus "arises from" the contract. *Seth*, 2013 WL 11927712, at *3. Here, the "know your customer" and other duties described in the Complaint existed (if at all) as a result of the contractual relationship between Cryptsy and Coinbase, and thus are properly classified as duties "arising from" the contract.

Moreover, the non-signatory plaintiff in *Seth* had a direct relationship with the defendant that was attempting to compel arbitration; indeed, the plaintiff had wired money directly to that defendant. *Id.* at *1. Here, in contrast, there was no relationship at all between Plaintiff and Coinbase, and all of Plaintiff's claims are entirely derivative of the relationship between Cryptsy and Coinbase – a relationship created by, and limited by, a contract that contained a mandatory arbitration clause. In other words, unlike *Seth*, this case involves claims that necessarily run through and are derivative of a contractual relationship established with the express agreement that any disputes regarding that relationship would be resolved through arbitration.

Plaintiff also argues (Opp. at 7) that his claims "are precisely like those described in" *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999). *Seifert*, however, involved a home purchaser's wrongful death action against a builder arising out of the death of the plaintiff's husband after an air conditioner in the home malfunctioned and spewed carbon monoxide into the house. The Florida Supreme Court held that there was no "nexus" between the wrongful death action and the sales contact, reasoning that the contract did not contemplate "the parties' rights in the event of personal injuries or death arising out of any alleged tortious conduct." *Id.* at 638, 641. Here, in contrast there is a clear "nexus" between Plaintiff's claims and the Cryptsy-Coinbase contract. As explained above, Plaintiff's claims are based upon his theory that (a) Coinbase accepted certain duties when it entered into the contract with Cyptsy; (b) Coinbase

breached those duties; (c) Cryptsy was harmed by the breach, and the harm flowed through to Plaintiff as a Cryptsy account holder.

Second, Plaintiff argues that even if he is otherwise bound to arbitrate under the principle of estoppel, his claims fall outside the scope of the contractual arbitration clause, which, he says, is "too narrowly written." Opp. at 10.  As a threshold matter, however, and as Coinbase showed in its opening memorandum, questions about the scope of the arbitration clause are properly directed to the arbitrator, not the Court.  Mem. at 8-9; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)) ("[W]hen parties incorporate the rules of the [American Arbitration] Association into their contract, they 'clearly and unmistakably agree[ ] that the arbitrator should decide whether the arbitration clause [applies].'").

In his Opposition, Plaintiff does not dispute this point, and thus concedes it. Accordingly, any dispute about the breadth of the arbitration clause should be decided not by this Court but by the arbitrator.

Moreover, even if the Court were to consider this issue rather than sending it to the arbitrator, the facts and the law support Coinbase's position, not Plaintiff's.  Indeed, the Receiver (represented by the same counsel as Plaintiff) has conceded that the very same arbitration clause in the very same contract is broad enough to cover the very same claims based on the very same conduct of the very same defendant.

Disputes about the scope of an arbitration clause are (like other questions of contract interpretation) governed by state contract law.  Here, the Court should apply California law, as the parties agreed to a California choice of law provision in the contract at issue (Dkt. No. 16-1,

at 29 (paragraph 9.10 of 2014 User Agreement)), and Florida courts give effect to contractual choice of law provisions. *Dep't of Motor Vehicles for Use & Benefit of Fifth Ave. Motors, Ltd. v. Mercedes-Benz of N. Am., Inc.*, 408 So. 2d 627, 629 (Fla. Dist. Ct. App. 1981) ("It is well established that when the parties to a contract have indicated their intention as to the law which is to govern, it will be governed by such law in accordance with the intent of the parties.").

Under California law, the phrase "any dispute arising under this agreement" is considered to be a broad arbitration clause. For example, in *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677 (2000), a California appellate court reviewed an order denying a motion to compel arbitration of a suit based on "numerous tort theories." *Id.* at 680. The appellate court described the arbitration agreement as a "very broad arbitration clause." *Id.* at 681. The clause required the arbitration of "[a]ny problem or dispute arising under this Agreement and/or concerning the terms of this Agreement." *Id.* at 681 n.2. Based on this wording, the appellate court reversed the trial court's order, stating: "It has long been the rule in California that a broadly worded arbitration clause, such as we have here, may extend to tort claims that may *arise under or from the contractual relationship*." *Id.* at 686 (emphasis added); *see also, e.g., Rowe*, 153 Cal. App. 4th at 1286 n.4 (holding that clause requiring arbitration of "all disputes under this Agreement" speaks "broadly" and encompasses tort and statutory claims); *Efund v. Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007); Mem. at 9-10. Thus, contrary to Plaintiff's contention, the arbitration clause at issue is not "narrowly written" but is instead a broad clause that encompasses within it both all disputes (whether contract, tort, or otherwise) that have a nexus to the Cryptsy/Coinbase contractual relationship.

And even under Florida law (which should not govern here), Coinbase's arbitration clause is still sufficiently broad to include Plaintiff's claims. Contrary to Plaintiff's assertion,

7
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130 (305) 379-0400

Opp. at 11, Florida courts do not require an arbitration clause contain the phrase "arising under and relating to" for the court to construe the provision broadly. *See, e.g., Aztec Med. Servs., Inc. v. Burger*, 792 So. 2d 617, 623 (Fla. Dist. Ct. App. 2001) (stating plain language of broad arbitration clause applying to "any dispute" "does not limit itself to only those claims regarding the rights and obligations of the parties 'under the terms of the agreement'").

Because there is a clear nexus between Plaintiff's claims and the agreements containing a broad arbitration clause, this Court should compel Plaintiff to arbitrate his dispute. Plaintiff is bound by the arbitration clause, and the dispute falls within the scope of the arbitration provision.

## II.   THE COURT SHOULD STAY LITIGATION PENDING THE RESOLUTION OF THE ARBITRATION.

Even if this Court were to determine that any of Plaintiff's claims are not subject to arbitration, the Court should exercise its discretion to stay those claims pending the resolution of the arbitration, in the interest of preserving judicial resources.

Plaintiff asserts that his claims are "factually distinct" from the Receiver's. Opp. at 12. This is a rather surprising contention, considering that the Plaintiff and Receiver are represented by the same counsel, filed a joint complaint, and in their joint complaint alleged *the exact same four claims* (aiding and abetting breach of fiduciary duty, aiding and abetting conversion, negligence, and unjust enrichment) using *the exact same eighteen paragraphs of allegations*, repeated verbatim (with the exception of party names and verb tenses). *Compare* Compl. ¶¶ 151–169, *with id.* ¶¶ 170–188. The Receiver and Plaintiff assert in their complaint the same underlying facts, the same alleged duties, the same alleged breaches of those duties, and the same alleged injuries. The underlying legal theories are the same, the alleged conduct of Cryptsy and Coinbase is the same, and the evidence, testimony, documents, and other facts to be presented in the arbitration or at trial can also be expected to be the same (or, at the very least, to overlap

substantially). Thus, the purported differences (if any) between the claims of the Plaintiff and the Receiver will be far outweighed by the areas of overlap.

In addition, the arbitration will likely resolve all, or at least most, of the Plaintiff's claims against Coinbase. If the Receiver succeeds in obtaining a recovery against Coinbase in the arbitration, the Plaintiff and other account holders will be the beneficiaries of that recovery – and so presumably the Plaintiff would not then need to proceed on a duplicative and derivative claim against Coinbase (and, in any event, Plaintiff would not be entitled to recover twice for his alleged losses). If, however, Coinbase prevails in the arbitration, the rulings supporting such a result (that Coinbase owed no duty, that Coinbase violated no duty, and/or that no harm resulted from any alleged breach by Coinbase) could be binding on the Plaintiff and other account holders as a matter of res judicata or collateral estoppel – and, at the very least, such rulings as a practical matter might well dissuade Plaintiff and his counsel from continuing to pursue meritless claims against Coinbase based upon non-existent facts and baseless legal theories.

Plaintiff cites *Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (U.S. 1983), but neither case supports his position on the stay issue. In *Klay*, the Eleventh Circuit reaffirmed the noncontroversial proposition that courts have discretion with regard to whether to order a stay. 389 F.3d at 1204. The court then went on to state that where, as here, arbitral claims "predominate" or would affect the outcome of non-arbitrable claims, a stay should generally be granted. *Id.* And in *Moses H. Cone*, the Supreme Court recognized that a stay of litigation pending a resolution of an arbitration may be "advisable" in "some cases." 460 U.S. at 21 n.23. Plaintiff does not cite any case that would support his argument that a stay is inappropriate given the identical factual and legal predicates of, and the identical (or at least overlapping) evidence that relates to, the claims

of the Plaintiff and the Receiver. *See Petrik v. Reliant Pharmaceuticals*, 2007 WL 3283170, at *3 (M.D. Fla. 2007) (granting stay to "conserve judicial resources" where arbitration may, as a practical matter, resolve non-arbitrable claims); *see also Waste Management, Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 343 (5th Cir. 2004) (reversing denial of stay where litigation would "destroy the signatories' right to a meaningful arbitration").

Because the claims of the Plaintiff mirror the upcoming arbitration proceeding that will address the claims of the Receiver, this Court should stay any non-arbitrable claims pending the arbitration's resolution to preserve judicial resources.

## CONCLUSION

A binding and valid arbitration agreement requires arbitration of Plaintiff's claims.

**WHEREFORE**, Coinbase respectfully requests an order directing the Plaintiffs to arbitrate the claims asserted in the complaint (and staying the litigation of the non-arbitrable claims, if any).

Respectfully submitted,

/s/ James R. Liebler, II
J. RANDOLPH LIEBLER
Florida Bar No. 507954
E-mail: JRL@lgplaw.com
ANDREW KEMP-GERSTEL
Florida Bar No. 0044332
E-mail: akg@lgplaw.com
JAMES R. LIEBLER II
Florida Bar No. 115348
E-mail: JRLII@lgplaw.com
LIEBLER, GONZALEZ &PORTUONDO
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Fax: (305) 379-9626

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of March, 2017, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *James R. Liebler, II*
JAMES R. LIEBLER II