UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-81992-CIV-MARRA

BRANDON LEIDEL, individually and on
behalf of all others similarly situated, and
JAMES D. SALLAH, ESQ. as receiver/
corporate monitor of Project Investors, Inc.,
d/b/a Cryptsy,

Plaintiff,

vs.

COINBASE, INC., a Delaware corporation
d/b/a GLOBAL DIGITAL ASSET EXCHANGE
(GDAX),

Defendant.
_____/

## **OPINION AND ORDER**

This cause is before the Court upon Defendant's Corrected Motion to Compel Arbitration (DE 16) and Defendant's Motion to Stay Discovery (DE 32). The Motion is fully briefed and ripe for review.

I. Background

Plaintiff Brandon Leidel ("Plaintiff" "Leidel"), individually and on behalf of all other persons similarly situated, brings this class action complaint against Defendant Coinbase, Inc. ("Defendant" "Coinbase"), a digital currency wallet and online platform where merchants and consumer can buy, sell, transfer and store their digital currency. (Compl. ¶ 10, DE 1.) According to the Complaint, Defendant holds itself out as a regulated and fully compliant entity, registered with the United States Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") as a money services business, as that term is defined by FinCEN. (Compl. ¶ 11.)

Plaintiffs are a class of similarly situated users of Project Investors, Inc. d/b/a Cryptsy, a cryptocurrency and money service business that served clients in the United States and abroad. (Compl. ¶ 1. ) Cryptsy was owned, operated and directed by Paul Vernon, the company's president and chief executive officer. (Compl. ¶ 24.)

Cryptsy and Vernon each had an account at Coinbase. (Compl. ¶ 45.) Unbeknownst to the class Plaintiffs, Cryptsy and Vernon were stealing from user accounts and liquidating the currency through Crypsty and Vernon's accounts at Coinbase. (Compl. ¶ 50.) The Complaint alleges that Coinbase knew or should have known that Plaintiffs' assets were being liquidated through its exchange. (Compl. ¶ 73.) The class Plaintiffs bring claims for aiding and abetting breach of fiduciary duty (count one); aiding and abetting conversion (count two); negligence (count three) and unjust enrichment (count four) against Defendant.[1]

Coinbase points to an arbitration clause contained in a 2013 User Agreement and agreed to by Cryptsy and Vernon which states:

> Except for claims for injunctive or equitable relief or claims regarding intellectual property rights ... any dispute arising under this Agreement shall be finally settled on an individual basis in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes and you and Coinbase hereby expressly waive trial by jury. The arbitration shall take place in San Francisco, California, in the English language and the arbitral decision may be enforced in any court.

(Ex. B, DE 16-1.)

Coinbase also relies upon the arbitration clause in the 2014 User Agreement, also agreed

---

[1] Plaintiff James D. Sallah is the receiver for Project Investors, Inc. d/b/a Cryptsy. As part of this Complaint, he brought claims against Defendant for aiding and abetting breach of fiduciary duty (count five); aiding and abetting conversion (count six); negligence (count seven) and unjust enrichment (count eight). The receiver has consented to arbitrate his claims against Defendant and the parties agreed to dismiss those claims without prejudice. (DE 30.)

2

to by Crypsty and Vernon:

> EXCEPT FOR CLAIMS FOR INJUNCTIVE OR EQUITABLE RELIEF OR CLAIMS REGARDING INTELLECTUAL PROPERTY RIGHTS … ANY DISPUTE ARISING UNDER THIS AGREEMENT SHALL BE FINALLY SETTLED ON AN INDIVIDUAL BASIS IN ACCORDANCE WITH THE AMERICAN ARBITRATION ASSOCIATION'S RULES FOR ARBITRATION OF CONSUMER-RELATED DISPUTES AND YOU AND COINBASE HEREBY EXPRESSLY WAIVE TRIAL BY JURY. THE ARBITRATION SHALL TAKE PLACE IN SAN FRANCISCO, CALIFORNIA, IN THE ENGLISH LANGUAGE AND THE ARBITRAL DECISION MAY BE ENFORCED IN ANY COURT. AT YOUR REQUEST, HEARINGS MAY BE CONDUCTED IN PERSON OR BY TELEPHONE AND THE ARBITRATOR MAY PROVIDE FOR SUBMITTING AND DETERMINING MOTIONS ON BRIEFS, WITHOUT ORAL HEARINGS. … ADDITIONALLY, YOU HEREBY WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.

(Ex. E, DE 16-1.)

Based on these provisions, Defendant moves to compel Plaintiff to arbitrate, as a non-signatory under the doctrine of equitable estoppel. Alternatively, Defendant requests that the Court stays the litigation pending the resolution of the arbitration.

II. Discussion

The Supreme Court has articulated a strong federal policy favoring arbitration agreements. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). One of the purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., is to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be "rigorously enforce[d]" by the courts. Id. at 221. Because arbitration is a matter of contract, however, the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "[A] party plainly cannot

be bound by an arbitration clause to which it does not consent." BG Grp., PLC v. Republic of Argentina, — U.S. —, 134 S. Ct. 1198, 1213 (2014) (Sotomayor, J. concurring).

Arbitration may be compelled against non-signatories to an arbitration agreement if, under state law contract principles, "assent [is] shown by the acts or performance of the party." BDO Seidman, LLP v. Bee, 970 So. 2d 869, 874 (Fla. Dist. Ct. App. 2007). A non-signatory can be estopped "from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Id. (citing Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1312 (11th Cir. 2005)). According to Defendant, Plaintiff's claims are based upon the assertion that when Defendant agreed to open the accounts, Defendant took on a duty to Plaintiff and other Cryptsy account holders to oversee the activities of Cryptsy and Vernon with regard to the accounts. Therefore, according to Defendant, because Plaintiff's claims are based upon the accounts established pursuant to the user agreement, Plaintiff must arbitrate his claims under the principles of equitable estoppel. (Mot. at 12.)

The Court disagrees. In Seth v. Rajagopalan, No. 12-Civ-61040, 2013 WL 11927712 (S.D. Fla. Jan. 25, 2013), the plaintiff sued a corporate defendant and its principal for fraud after he suffered a million dollar loss. Id. at * 1. All of the defendants had entered into a contractual agreement with one another that contained an arbitration agreement. Id. at * 2. The plaintiff was not a party to the agreement. After finding that the cross-claims between the defendants were subject to arbitration, the Court turned to the plaintiff's claims. Id. at * 5. The court rejected the assertion that the plaintiff was equitably estopped from avoiding arbitration where the plaintiff's case did not hinge entirely on the agreement containing the arbitration clause, the plaintiff was not seeking damages in accordance with the agreement containing the arbitration clause and the

plaintiff did not directly benefit from the agreement. Id. at * 8.

Here, Plaintiff received no benefits from the agreement entered into between Cryptsy/Vernon and Defendant, and Plaintiff is not asserting any rights or benefits under the agreement. See In re Humana Inc. Managed Care Litigation, 285 F.3d 971, 976 (11th Cir. 2002), rev'd on other grounds, 538 U.S. 401 (2003) ("The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel). This is reflected in the fact that Plaintiff does not bring a claim for breach of contract, but for tort claims.[2] Moreover, Plaintiff's claims are not derivative of the Receiver's claims, as posited by Defendant. To the contrary, based on the allegations, Plaintiff was directly harmed.

Furthermore, the contract entered into between Cryptsy/Vernon and Defendant had nothing to do with the alleged wrongful conduct. Any indirect benefits Plaintiff received did not arise from the contract, but from the regulatory scheme under which Defendant operates. The Florida Supreme Court has remarked:

> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. Therefore, a contractually-imposed arbitration requirement would not apply to such a claim.

---

[2] The Court recognizes that "[w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." Gregory v. Electro-Mech. Corp., 83 F.3d 382, 384 (11th Cir. 1996). For the reasons stated herein, however, the Court finds that Plaintiff's claims are not within the scope of the arbitration clause.

5

Seifert v. U.S. Home Corp., 750 So. 2d 633, 639 (Fla. 1999) (internal quotation marks and ellipses omitted).

As to Defendant's request that the case be stayed pending the arbitration of the Receiver's claims, it is axiomatic that courts have discretion to stay non-arbitrable claims. Klay v. All Defendants, 389 F.3d 1191, 1204 (11th Cir. 2004). Courts, however, "generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." Id. (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 225 (1985)).

The Court finds that the "the outcome of the nonarbitrable claims" will not "depend on the arbitrator's decision" and the claims brought by Plaintiff are independent of the claims brought by the Receiver. See Branch v. Ottinger, 477 F. App'x 718, 721 (11th Cir. 2012) (no basis to stay non-arbitrable claims that, while related to the arbitrable claims, were independent and involved different parties).

For the foregoing reasons, the motion to compel arbitration is denied.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Corrected Motion to Compel Arbitration (DE 16) is **DENIED.**

2) Defendant's Motion to Stay Discovery (DE 32) is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 1st day of June, 2017.

KENNETH A. MARRA
United States District Judge