UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:16-cv-80060-MARRA

BRANDON LEIDEL, individually, and
MICHAEL WILSON, individually, and on behalf
of All Others Similarly Situated,

    Plaintiffs,

v.

PROJECT INVESTORS, INC. d/b/a CRYPTSY, a
Florida corporation, PAUL VERNON, individually, and
LORIE ANN NETTLES, individually,

    Defendants.

_____/

## FIRST REPORT OF RECEIVER JAMES D. SALLAH

Pursuant to paragraph no. 39 of Section XVI of the Order Granting Plaintiffs' Renewed Motion for Appointment of James D. Sallah, Esq. as Receiver/Corporate Monitor over Defendant Project Investors, Inc. d/b/a Cryptsy [DE 33] (the "Appointment Order") dated April 4, 2016, James D. Sallah, not individually but solely in his capacity as the Court-appointed receiver (the "Receiver") for Defendant Project Investors, Inc. d/b/a Cryptsy ("Cryptsy"), submits the following First Report.[1]

### I. Introduction

As a matter of background, this proceeding is a class action lawsuit by Cryptsy users/ cryptocurrency investors who had an account with Cryptsy. Cryptsy was an online business for

---

[1] Pursuant to paragraph no. 39, the Appointment Order requires me to file a First Report within thirty (30) days of my appointment (*i.e.*, on or before May 4, 2016), a Second Report within ninety (90) days of the First Report (*i.e.*, on or before August 2, 2016), and then additional reports every ninety (90) days thereafter.

1

EXHIBIT "A"

the public to exchange, invest, and trade digital cryptocurrencies. The Plaintiffs, again class representatives of Cryptsy cryptocurrency users/account holders, have alleged, among other things, that (1) Cryptsy's principal, Defendant Paul Vernon, previously shut down Cryptsy's operations and has fled to China; (2) approximately $5 million of investor funds and cryptocurrencies have been missing and unaccounted for several months; (3) investors have been unable to access and use their Cryptsy accounts; and (4) Mr. Vernon and his now ex-wife, Defendant Lorie Ann Nettles, purchased in March 2015 a luxurious home in Delray Beach for $1,374,881 in cash from Cryptsy-derived funds and Ms. Nettles recently received the property in her divorce settlement from Mr. Vernon.

Given these allegations (and others), Plaintiffs moved for the appointment of a corporate monitor or receiver [DE 18], which the Court granted and appointed me as Receiver in the Appointment Order on April 4, 2016. I then immediately moved for Court-approval to retain my legal counsel from the law firm of Payton & Associates, LLC [DE 35], who were approved on April 6, 2016 [DE 36].

I am a former SEC Senior Counsel who specializes in securities matters. I also am an adjunct faculty member at the University of Miami School of Law where I teach a seminar on SEC Enforcement.

I have served as a District Court receiver in the Southern District of Florida in: *Katz v. MRT Holdings, et al.*, Case No. 07-CV-61438-JIC, in connection with a multi-million dollar Ponzi scheme; and *Securities and Exchange Commission v. JCS Enterprises, Inc., et al.*, Case No. 14-80468-CIV-Middlebrooks, in connection with an $80-million dollar Ponzi scheme.

I have served as a corporate monitor in the 11th Judicial Circuit in and for Miami-Dade County, Florida, in *Chirag Amin v. OM Global Investment Fund LLC, et al.*, Case No. 13-18620

2

CA 13, in connection with a multi-million dollar fraud scheme.

I have also represented SEC and CFTC receivers in several investment and fraud-related matters.

Since my appointment, I, with the help of my counsel and staff, have been working diligently to secure account, wallet, and bank information and records in Cryptsy's name or derived from Cryptsy and/or its investors. I have served initial demand letters, document requests and subpoenas on several parties and nonparties regarding critical Cryptsy issues and have recently received and/or will be shortly receiving responsive information and documents. The specific demands, document requests, and subpoenas are discussed below.

The purpose of this First Report is to more specifically advise the Court, investors, and other interested parties as to the material actions that I have taken since the commencement of the receivership one month ago.

## II.  Assessing Cryptsy's Viability and Operations

I can confirm to the Court that investors do not have access to their Cryptsy accounts. I can confirm to the Court that significant amounts of money and cryptocurrencies are currently missing, unaccounted for and/or possibly locked in Cryptsy's servers which I am attempting to secure and access. I can confirm to the Court that Cryptsy is no longer operating or running a business.

As of this First Report, I have not received any cooperation from Mr. Vernon, so my job has been made much more difficult regarding every issue involving Cryptsy, especially wallet and investor information. From my investigation, accessing the servers will be critical to determine current and past account, wallet, investor, and financial information and records.

3

There are former employees, some of whom I have contacted and who are cooperating and assisting me. I will continue to attempt to contact others. Certain former employees have relevant information for purposes of potentially locating and securing assets and records for the investors' benefit.

### III. The Investors

There are a significant amount of investors who invested through Cryptsy. I will be attempting to determine the identity of each and every investor, their contact information, their investment amount, which investors are owed money (and how much), which investors made money (and how much and when), and which investors received any money back (and how much and when). My counsel and I have corresponded and spoken with many investors and do such on a daily basis. Plaintiffs' counsel, who represent the class of investors, will likely be a tremendous source of investor information as well.

Depending on the circumstances and at the appropriate time, I may recommend and obtain Court-approval on a procedure for repaying and/or returning funds and/or cryptocurrencies to investors who are legitimately owed such. Because I am still in the process of attempting to identify and secure accounts, wallets, cryptocurrencies and funds, it is premature to discuss in any further detail such a potential procedure.

I will also be evaluating and attempting to identify any investors who improperly profited or received improper redemptions from Cryptsy. If such profits or redemptions are not promptly returned to me, I will be taking the appropriate legal action.

### IV. The Premises

The company shut down months before my appointment. Therefore, Cryptsy has no current physical premises or offices to secure. Cryptsy previously operated out of the premises

located at 160 Congress Park Drive, Suite 101, Delray Beach, Florida 33445. I will be contacting the landlord to discuss certain issues regarding Cryptsy.

Because there is no physical office space to secure, there are no hard files, computers, furniture or equipment to secure in an office, although they may be located elsewhere which I will continue to investigate.

### V. Demands, Document Requests, and Subpoenas

#### A. Paul Vernon

On April 6, 2016, I served Defendant Paul Vernon with a demand letter, including 41 requests for documents and information. A copy of the demand letter is attached as Exhibit A.[2] In the demand letter, I requested, among other things, an accounting of the missing millions of dollars in cryptocurrencies or investor funds; an investor list with contact information; account and wallet information for me to secure any and all cryptocurrencies and funds in Cryptsy's name or derived from Cryptsy; and Cryptsy's servers and all of its books and records. As of this First Report, Mr. Vernon has not responded to my letter/requests, has not provided any documents or information to me and therefore is not cooperating in any way, shape or form.

#### B. Lorie Ann Nettles and the Delray Beach Property Bought with Cryptsy Funds

On April 8, 2016, I served Defendant Lorie Ann Nettles, Paul Vernon's now ex-wife, with a demand letter, including 50 requests for documents and information. A copy of the demand letter is attached as Exhibit B. In the demand letter, I requested, among other things, many of the same Cryptsy-associated items requested from Mr. Vernon (in the event she had access to such);

---

[2] The demand letters and subpoenas mentioned herein included a copy of the Appointment Order for purposes of service of same on the recipients, but the Appointment Order will not be attached herein as part of each exhibit because it would create an unnecessary voluminous filing with the same document repeatedly attached.

5

personal bank statements to determine what material/valuable items she and/or her ex-husband had purchased with Cryptsy-derived funds; and information regarding the source of funding of the Delray Beach property that Mr. Vernon and Ms. Nettles had purchased in March 2015 for $1,374,881 in cash.

On April 21, 2016, Ms. Nettles produced over 1,800 pages of documents which my counsel is currently reviewing. Some documents, such as monthly personal account statements, are incomplete, so I will be subpoenaing the relevant bank, TD Bank, for the missing bank records. Ms. Nettles, through counsel, has represented that she will cooperate with such a follow-up production of bank records.

I have also confirmed that the million-dollar plus property currently in Ms. Nettles' name and located at 16832 Charles River Drive, Delray Beach, Florida 33446 was derived from Cryptsy and should be receivership property. As such, I have filed a lis pendens on the property for the investors' benefit. This was necessary to stop Ms. Nettles from selling the property which she has been trying to do since recently finalizing her divorce. The property has been and is currently on the market for $1.5 million.

On May 4, 2016, I served a demand letter on Ms. Nettles regarding the property, and absent a prompt reasonable settlement, will be promptly filing a separate lawsuit against her for turnover of the property and soon thereafter moving for summary judgment. If filed, I will seek to transfer my lawsuit against Ms. Nettles to this Court as an ancillary receivership lawsuit related or similar to the underlying class action/main receivership proceeding.

### C. Kaushal "Ken" Majmudar and Ridgewood Investments

Kaushal "Ken" Majmudar was allegedly a shareholder of Cryptsy in the amount of approximately 10%. Mr. Majmudar was known as "Cryptsy Ken" and allegedly provided

6

consulting services and marketing to Cryptsy. Mr. Majmudar is a managing partner of Ridgewood Investments, an investment firm in New Jersey.

On April 6, 2016, I served Mr. Majmudar and his company with a demand letter and subpoenas. Copies of the demand letter and subpoenas are attached as Composite Exhibit C.

In the demand letter and subpoenas, I requested, among other things, Mr. Majmudar's file on Cryptsy, including an investor list with contact information; documents regarding the funds or cryptocurrencies he received that were derived from Cryptsy; and documents regarding his relationship with Cryptsy. On April 27, 2016, Mr. Majmudar, through his counsel, produced documents. My counsel is currently reviewing the production.

### D. TD Bank

Cryptsy had at least two bank accounts at TD Bank. Mr. Vernon and Ms. Nettles also had at least one personal bank account at TD Bank. On April 6, 2016, I served TD Bank with a demand letter and subpoena. Copies of the demand letter and subpoena are attached as Composite Exhibit D.

In the demand letter, I requested that TD Bank freeze any accounts in Cryptsy's name. TD Bank has confirmed in writing that there are no Cryptsy accounts with funds subject to an asset freeze.

In the subpoena, I requested bank records, such as monthly statements and withdrawal images (checks, wires, etc.) in Cryptsy accounts. On April 27, 2016, TD Bank produced bank records requested in the subpoena. My counsel is currently reviewing the production.

As stated above, I will be serving in the near future a follow-up subpoena on TD Bank for the missing personal bank records from Ms. Nettles' production.

### E. SunTrust Bank

Cryptsy had at least one bank account at SunTrust Bank. On April 6, 2016, I served SunTrust Bank with a demand letter and subpoena. Copies of the demand letter and subpoena are attached as Composite Exhibit E.

In the demand letter, I requested that SunTrust Bank freeze any accounts in Cryptsy's name. SunTrust Bank has yet to confirm in writing the status of the asset freeze, which I will be addressing with the bank.

In the subpoena, I requested bank records, such as monthly statements and withdrawal images (checks, wires, etc.) in Cryptsy accounts. As of this First Report, SunTrust has not produced anything. SunTrust has previously corresponded with my counsel that it is working on the production and I anticipate receiving the production shortly.

### F. Coinbase, Inc.

Cryptsy used Coinbase, Inc. as the clearing firm to execute cryptocurrency activities, such as storing, buying and selling cryptocurrencies and converting them to currency. Cryptsy made its revenues this way. On April 6, 2016, I served Coinbase with a demand letter and subpoena. Copies of the demand letter and subpoena are attached as Composite Exhibit F.

In the demand letter, I requested that Coinbase freeze any accounts, wallets, cryptocurrencies or funds in Cryptsy's name. Coinbase froze a couple of remaining bitcoins in Cryptsy-associated wallets and sent me a check for same in the amount of $24.66. I will be opening a receivership bank account and depositing these funds.

In the subpoena, I requested, among other things, documents regarding account activity in Cryptsy accounts or wallets. On April 18, 2016, Coinbase produced records, including reconstructions of account activity in three wallets or accounts in the names of Cryptsy, Mr.

Vernon and an affiliated Cryptsy company called Hashmax USA, LLC. My counsel is currently reviewing the production.

### G. Bittrex, LLC

Bittrex, LLC is a digital currency exchange that allows individuals and businesses to buy and sell cryptocurrencies and digital tokens. On Sunday, April 10, 2016, certain cryptocurrency activity took place at Bittrex which had been previously associated with Cryptsy. Knowledgeable experts in the industry who were aware of the receivership immediately contacted Bittrex and immediately contacted my counsel informing both of such activity.

On April 11, 2016, I served Bittrex with a demand letter and subpoena. Copies of the demand letter and subpoena are attached as Composite Exhibit G.

In the demand letter, I requested that Bittrex freeze any accounts or wallets in Cryptsy's name. In the subpoena, I requested, among other things, documents regarding account activity in Cryptsy accounts or wallets.

On April 13, 2016, my counsel attended a conference call with a Bittrex representative and Bittrex's counsel. During that call, Bittrex confirmed that it had frozen a wallet of cryptocurrencies in the amount of at least $100,000. Bittrex also represented that it would provide a written response to the demand letter explaining what exactly had been frozen and would produce certain documents responsive to the subpoena. As of this First Report, Bittrex has not done such and I will be following-up.

Finally, during the Bittrex call, Bittrex requested that I provide a tracing analysis for the frozen wallet. I have prepared that analysis tracing the account activity from April 10, 2016 to prior Cryptsy-associated activities. I intend to provide the analysis to Bittrex.

Case 9:16-cv-81996-KAM   Document 45-1   Entered on FLSD Docket 05/04/2016   Page 13 of 105

### H. Vault Networks, Inc.

On April 12, 2016, my counsel received an anonymous email from a disposable email address stating that Cryptsy's servers are located at Vault Networks, Inc. in Miami. That same day, I served Vault Networks with a demand letter. A copy of the demand letter is attached as Exhibit H.

In the demand letter, I requested that Vault Networks confirm whether or not it has Cryptsy's servers and, if so, to preserve and protect them and all information on them. In the interim and recently, I have learned through independent information that Vault Networks, indeed, has Cryptsy's servers.

My counsel and I repeatedly corresponded with Vault Networks regarding these time-sensitive issues and scheduling a prompt meeting to access the servers, all of which were without success. Therefore, on May 2, 2016, I moved to immediately compel Vault Networks to provide access to the Cryptsy servers on or before Friday, May 6, 2016, so I can determine what information is there, especially prior and current wallet information for the investors' benefit [DE 43]. On May 3, 2016, the Court granted my motion to compel [DE 44]. In response to the Order, Vault Networks has finally agreed to provide access to the Cryptsy servers on Friday, May 6, 2016, at which time I will attempt to determine prior and current wallet information and attempt to secure potential cryptocurrencies and/or funds for the investors' benefit.

### I. Digital Ocean, Inc.

Soon after my appointment, I discovered that Digital Ocean was the internet service provider for the www.cryptsy.com website. On April 8, 2016, I served Digital Ocean with a demand letter. A copy of the demand letter is attached as Exhibit I. As of my demand letter, the website content stated that the site was down for maintenance.

10

In the demand letter, I requested that Digital Ocean only answer to me as Receiver for Cryptsy's website content and to include content on the website regarding my name, my appointment as Receiver and my counsel's name and contact information.

Digital Ocean has not honored my request to include information regarding the receivership, but has removed the maintenance content on the website. There is currently nothing displayed when someone tries to go to www.cryptsy.com.

## VI. Preservation of Assets

### A. Open Accounts and Positions

As stated above, there is at least one wallet currently frozen at Bittrex which I have asserted is derived from Cryptsy. I expect to receive Bittrex's report in the near future which will provide more details on the issue. Bittrex has verbally represented to me that the frozen wallet has more than $100,000 in cryptocurrencies.

I am continuing to investigate, search for and secure all wallets or accounts in Cryptsy's name or derived from Cryptsy for the investors' benefit.

### B. Bank and Exchange Accounts

As stated above, I learned that Cryptsy had bank accounts at TD Bank and SunTrust Bank, and cryptocurrency wallets/accounts at Coinbase and Bittrex. I served the Appointment Order in demand letters and subpoenas on these institutions to ensure my file is complete with Cryptsy's account records. I have begun reviewing and will continue to review account records for the most significant and relevant monetary transactions for the investors' benefit. I expect to receive the remaining subpoenaed records in the near future.

I may also retain a forensic accountant who will analyze the most relevant financial records to determine the use of Cryptsy's funds and cryptocurrencies, the amounts owed to investors, and potential claims against third parties.

### C. Real Estate

As stated above, the Delay Beach property located at 16832 Charles River Drive, Delray Beach, Florida 33446 is receivership property. Absent a prompt resolution, I will be filing a separate ancillary receivership lawsuit against Ms. Nettles.

### D. Personal Items

Ms. Nettles drives an Infiniti QX80 SUV purchased in January 2015 for $82,353.66 in cash. Like the Delray Beach property (also purchased in cash), Cryptsy-derived funds were the source of this purchase. Therefore, the Infiniti, which likely has a current value of over $60,000, is also a receivership asset which should be immediately turned over to me as Receiver for the investors' benefit, absent which I will be filing a separate ancillary receivership lawsuit against Ms. Nettles.

I am continuing to investigate what other personal assets, whether possessed by Ms. Nettles or any others, may be subject to this proceeding.

### E. Office Furniture, Fixtures, and Equipment

I am continuing to investigate what, if any, office furniture, fixtures or equipment Cryptsy owned to secure and liquidate. In addition, because Cryptsy no longer had an office as of my appointment, there were no premises to vacate and no need to attempt to obtain the premises' landlord's agreement to excuse Cryptsy for any future rent.

### F. Defendants' Accounting of Assets

The Appointment Order – in Section IX – requires Defendants to provide an accounting

12

regarding various Cryptsy items to me within 30 days of my appointment (*i.e.*, on or before May 4, 2016). As of this First Report, I have not received such from Mr. Vernon or Ms. Nettles, although I anticipate that certain documents previously produced by Ms. Nettles in response to my document requests will satisfy certain accounting items.

### VII. Forensic Accounting and Discovery

As stated above, I may retain a forensic accounting firm to assist me in my receivership obligations. I will file a formal motion with the Court to retain the accounting firm.

I will also investigate and contact accounting firms that worked for Cryptsy during its operations pre-receivership. One important issue will be to determine the status of Cryptsy's tax returns for prior tax years.

### VIII. Website

I will likely establish a website in the near future, which informs investors: (1) that Cryptsy is now subject to receivership; (2) of certain filings, such as my Reports, lawsuits filed and important court documents filed in the underlying class action/receivership proceeding; (3) of my various duties, such as securing funds or cryptocurrencies for the investors' benefit; and (4) of the general progress of the overall receivership proceeding. The website will be the easiest way to communicate with a large amount of investors.

### IX. Conclusion

My overall investigation is still in its infancy and will be ongoing. I will continue to search for and attempt to secure funds, cryptocurrencies, accounts and wallets in Cryptsy's name or derived from Cryptsy. I will continue to review relevant bank and exchange records. I will continue to investigate potential claims against third parties. I will continue to search for a master

13

investor list with contact information and continue to correspond and/or speak with investors. I will supplement this First Report with my Second Report within ninety (90) days from today.

_____
James D. Sallah,
Receiver

Dated: May 4, 2016