# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Civil Action No. 9:16-CV-81992-MARRA

BRANDON LEIDEL, Individually,
and on behalf of All Others Similarly Situated,

    Plaintiff,

v.

COINBASE, INC., a Delaware corporation
d/b/a Global Digital Asset Exchange (GDAX),

    Defendant.

_____/

## REPLY IN SUPPORT OF THE MOTION FOR SUMMARY **JUDGMENT OF DEFENDANT COINBASE, INC.**

# INTRODUCTION

Despite taking full advantage of a year of discovery, including fifteen depositions, more than seventy requests for production of documents, and tens of thousands of pages of produced materials, Plaintiff fails to cite any evidence in his Opposition ("Opposition" or "Opp.") (DE 112) to Coinbase's Motion For Summary Judgment ("Motion" or "MSJ") (DE 100). Instead, Plaintiff invites the Court to disregard dispositive evidence and instead rely on speculation, guess work, and a repetition of the (unsupported) allegations of the Complaint, none of which can or does create a triable issue material to the MSJ. Coupled with his apocalyptic description of the industry – a "chaotic world" plagued by "extreme risks" and "rife with the risk of fraud, theft and money laundering" (Opp. at 14-15, 7) – one is left to wonder about the rationality of Plaintiff's decision to participate in such a market, and how a negligence standard could be applied in an industry which, according to Plaintiff, was the very definition of lawlessness. Stripped of such histrionics, the Opposition is devoid of legal or evidentiary substance.

With regard to his aiding and abetting claims (Counts One and Two), Plaintiff has no evidence that Coinbase had *actual knowledge* that Project Investors, Inc. d/b/a Cryptsy ("Cryptsy") and its principal Paul Vernon were stealing from Plaintiff. To the contrary, the undisputed evidence demonstrates that no one at Coinbase was aware of Mr. Vernon's alleged theft – and neither were the people closest to him (including his colleagues at Cryptsy).

On the negligence claim (Count Three), Plaintiff asks this Court to create new law in declaring that a business has a general duty of care to protect non-customers from economic loss. Duty is a threshold issue for the Court to decide as a matter of law, and it is dispositive here. No legal precedent supports Plaintiff's assertion that Coinbase owed him a duty of care. In addition, this claim also fails for the independent reason that there is no causal link between the alleged negligence and Plaintiff's claimed loss. Nor can the expert report Plaintiff filed with his Opposition save his negligence claim since the report addresses only (at most) the element of breach, and does not (and cannot) say anything about duty or causation.

Finally, Plaintiff's unjust enrichment claim (Count Four) is derivative of his other claims. It is not unjust for Coinbase to retain the modest trading fees that it earned for providing Cryptsy and Mr. Vernon exchange services on the same terms that it offered to its other customers.

For these reasons, and those stated in the MSJ, the Court should grant Coinbase's motion and enter summary judgment in Coinbase's favor on all counts.

1

## ARGUMENT

I. **SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNTS ONE AND TWO BECAUSE COINBASE DID NOT HAVE ACTUAL KNOWLEDGE OF THE ALLEGED THEFT.**

In the MSJ, Coinbase demonstrated that it was entitled to summary judgment on the aiding and abetting claims (Counts One and Two) based on the following:

(1) Plaintiff has the burden of presenting evidence that Coinbase had actual knowledge of the criminal theft allegedly committed by Cryptsy and Mr. Vernon, MSJ at 7;

(2) the term "actual knowledge" requires actual knowledge of wrongdoing; evidence of alleged "red flags" or allegations that Coinbase "should have" known of the alleged theft or "should have" investigated further are not sufficient, *id.* at 8-9;

(3) actual knowledge may be proven by direct or circumstantial evidence – that is, by evidence that could give rise to a *reasonable* inference of actual knowledge, *id.*;

(4) there is no direct evidence that Coinbase knew of the alleged theft, *id.* at 9-12; and

(5) there is also no circumstantial evidence that Coinbase knew of the alleged theft, *id.*

Plaintiff expressly agrees with, or at least does not dispute, the first four propositions. Opp. at 4-5. Plaintiff concedes there is no direct evidence that Coinbase had actual knowledge of the alleged theft, but argues there is circumstantial evidence of actual knowledge. *Id.* at 5-8.

What is this circumstantial evidence? Plaintiff does not say. The general assertions in his Opposition are not supported by citations to any actual evidence. *See id.* at 5-6. And in Plaintiff's Statement of Material Facts ("PSMF") (DE 112-1), most of the contentions are also not supported by evidence.[1]

Setting aside his rhetoric, Plaintiff argues that because Cryptsy and Mr. Vernon were high-volume customers, this somehow gives rise to a reasonable inference that Coinbase must have known they were criminals. *See, e.g.,* Opp. at 5 (citing "extremely large volume of Vernon and Cryptsy's transactions"). But this assertion is illogical and unsound. Coinbase has, and has had, many high-volume customers. That hardly proves (or supports a reasonable inference) that Coinbase has had *actual knowledge* that every high-volume customer was or is a criminal.

Moreover, Coinbase made an affirmative evidentiary showing that this transaction volume was consistent with expected levels. MSJ at 10-12. Plaintiff does not acknowledge – much less rebut – this showing. But the undisputed facts in the record cannot be ignored. Those

---

[1] Coinbase concurrently submits a response to the PSMF, along with evidentiary objections.

2

facts show that there was nothing about Cryptsy's transaction volumes that proves (or supports a reasonable inference) that Coinbase had actual knowledge of Mr. Vernon's alleged theft.

Plaintiff's other assertions fare no better, whether taken individually or together:

- Plaintiff claims that "Coinbase reaped huge revenues from Cryptsy and Vernon's transactions." Opp. at 6. The undisputed evidence is that, at the time, Coinbase charged its customers a trading fee of approximately 1 percent. Statement of Undisputed Material Facts ("SUMF") (DE 100-1), ¶ 9. That comes out to a total of less than $100,000 in revenue from the accounts of Mr. Vernon and Cryptsy over a period of approximately 28 months – an average of less than $4,000 per month. Since Plaintiff has alleged that Coinbase was worth "billions of dollars" at this time, PSMF, ¶ 59, an average of less than $4,000 per month does not fit the definition of "huge revenues." No reasonable inference can be drawn that this small amount of revenue gave Coinbase an incentive to disregard its (alleged) actual knowledge that Mr. Vernon was a thief in order to continue to provide services to him and Cryptsy.

- Plaintiff asserts that "Cryptsy operated from a jurisdiction known for protecting fraudsters." Opp. at 6. Cryptsy operated from its headquarters in Delray Beach, Florida; nothing in the record indicates that the City of Delray Beach, Palm Beach County, or the State of Florida is "a jurisdiction known for protecting fraudsters."[2]

- Coinbase contemporaneously conducted due diligence on the accounts of Cryptsy and Mr. Vernon. Examining the diligence in hindsight, Plaintiff's expert speculates that Coinbase should have asked more questions and/or conducted more diligence. Expert Report of Patricia M. O'Connor, Esq. ("Plaintiff's Expert Report") (DE 112-22), ¶¶ 15-17, 76-77. But what Coinbase supposedly "should have done" in some counter-factual universe does not establish (or support an inference) that Coinbase had *actual knowledge* of the alleged criminal conduct of Mr. Vernon and Cryptsy.

- Coinbase closed the Vernon and Cryptsy accounts after Coinbase investigators analyzed public information about potential investigations into Cryptsy in October 2015. Opp. at 8; PSMF, ¶¶ 71-72. But there is no evidence that even in October

---

[2] Cryptsy was registered in Belize, but there is no evidence that anyone at Coinbase concluded, based upon this registration, that Cryptsy and Mr. Vernon were engaging in criminal theft. The only evidence in the record is directly to the contrary. SUMF, ¶ 4.

- 2015 – much less at any earlier date – anyone at Coinbase knew or suspected that Mr. Vernon or Cryptsy was stealing from Cryptsy's account holders. SUMF, ¶ 4. Rather, the undisputed evidence is that Coinbase closed the accounts for unrelated reasons. MSJ at 9; SUMF, ¶ 5.
- In September 2017, Coinbase gave Mr. Vernon access to his transactions logs for tax reporting purposes. PSMF, ¶ 72. This occurred two years after Coinbase had closed the accounts, and almost a year after the initiation of this litigation. Plaintiff has failed to explain how this was improper, or how it relates to what Coinbase actually knew during the period at issue – May 2013 to October 2015.[3]

In sum, there is no evidence that Coinbase had actual knowledge of the alleged theft. In an overly formalistic response to the extensive case law cited by Coinbase, Plaintiff argues that Coinbase is not a bank, but that is beside the point. Opp. at 1-2, 7-8. The key question on the aiding and abetting claims is what Coinbase actually knew, not whether Coinbase is a bank or owed duties to non-customers. The question of actual knowledge is analytically and factually distinct from the question of duty. *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1149-50 (2005). A party either did or did not have actual knowledge of a fact, and here the undisputed evidence establishes that Coinbase did not know of the alleged theft.

None of the cases cited by Plaintiff changes this fact. As Coinbase acknowledged in its MSJ (at 9 n.8), there are certain cases in which the factual record was sufficient to support a reasonable inference that a defendant had actual knowledge of third-party wrongdoing.[4] Here, in contrast, there is no such evidence in the record.

---

[3] To the extent that there are any other factual allegations contained in Plaintiff's PSMF, Coinbase responds in the concurrently filed Response to the PSMF.

[4] *See, e.g., Freeman v. JPMorgan Chase Bank N.A.*, 675 F. App'x 926 (11th Cir. 2017) (bank employee received bribe from fraudster, interfered with investigation, and lied to investors); *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082 (N.D. Cal. 2013) (bank had actual knowledge that corporate funds were used for personal expenses); *Smith v. First Union Nat. Bank*, 2002 WL 31056104 (S.D. Fla. Aug. 23, 2002) (bank employee admitted facilitating improper transfers and concealing certain activity). The other cases that Plaintiff cites (Opp. at 5, 10) are off point. Two address pleading standards, not summary judgment. The others apply neither Florida nor California law and say nothing about the evidence of actual knowledge that a plaintiff must present to defeat a defense motion for summary judgment.

Finally, Plaintiff relied on a "willful blindness" theory in his Complaint, and so Coinbase demonstrated that such a theory was fundamentally flawed. MSJ at 10-12. Plaintiff now abandons that theory. Opp. at 11 n.6 ("Plaintiff does not rely on willful blindness ....").

Actual knowledge is a high standard, and one that requires actual facts and evidence in support; mere allegations, speculation, or guesswork about "red flags" or "should have knowns" is not enough. Because Plaintiff has not presented any evidence to show that Coinbase actually knew that Cryptsy and Mr. Vernon were engaging in criminal theft, Coinbase is entitled to summary judgment as a matter of law on Counts One and Two.[5]

## II.    SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNT THREE (FOR NEGLIGENCE).

Coinbase demonstrated in the MSJ that it is entitled to summary judgment on the negligence claim on three separate, independently dispositive, grounds: (1) Coinbase did not owe Plaintiff a duty of care; (2) Coinbase did not breach any alleged duty of care; and (3) the alleged negligence did not cause Plaintiff's claimed loss. MSJ at 13-17. Any one of these grounds is a sufficient basis, in and of itself, to grant summary judgment to Coinbase on the negligence claim.

In response, Plaintiff submits an expert report that addresses only the issue of breach – just one of the three independent grounds that Coinbase identified as a basis for summary judgment on Count Three. Plaintiff's Expert Report, ¶¶ 15-17, 76-77. Thus, even if the expert report created a triable issue on the question of breach (and it does not),[6] Coinbase is still entitled to summary judgment on Count Three based on each of the other two independent grounds.

---

[5] Summary judgment should be granted on Count One (for aiding and abetting Cryptsy's alleged breach of fiduciary duty) for the additional reason that Cryptsy did not owe fiduciary duties to Plaintiff. Most ordinary, arm's length transactions involve some degree of "trust" and "confidence," but, contrary to Plaintiff's argument (Opp. at 8-10), that alone does not create a fiduciary relationship; something more is required, such as giving advice or managing funds for others (as in trust or escrow accounts). *E.g., Doe v. Evans*, 814 So. 2d 370 (Fla. 2002) (counselor-counselee relationship); *Capital Bank v. MVB, Inc.*, 644 So. 2d 515 (Fla. 3d Dist. Ct. App. 1994) (providing advice on business transactions); *Combe v. Flocar Inv. Grp.*, 977 F. Supp. 2d 1301 (S.D. Fla. 2013) (providing management services); *see also Bankest Imports v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) ("[T]he fact that one party places its trust in the other does not create a confidential relationship in the absence of some recognition, acceptance, or undertaking of the duties of a fiduciary on the part of the other party.").

[6] For a number of reasons, Plaintiff's expert report does not create any disputed issue relating to breach, but Coinbase has not yet had the opportunity to depose the expert or to submit a *Daubert* challenge to her testimony. Accordingly, Coinbase defers the question of whether the expert

5

### A. Coinbase Did Not Owe Plaintiff A Duty Of Care.

Plaintiff asks this Court to reject well-established precedent and create a new legal requirement that a business owes a general duty of care to protect a non-customer from economic loss. Unsurprisingly, he cites no authority to support this novel proposition.

Duty is a question for this Court to decide as a matter of law, and courts have repeatedly held that financial institutions do not owe a general duty of care to non-customers or other strangers. MSJ at 13-14. In response, Plaintiff notes that Coinbase is not a bank, Opp. at 11, and although that is true, the principles in the cited cases apply, by analogy, to Coinbase. A digital currency exchange provides services to account holders with regard to their digital currency, some of which may be derived from the account holders' business activities. Coinbase may owe certain duties to its account holders, but in providing services to them, Coinbase does not take on an obligation to police the activities of its account holders to ensure the financial well-being of hundreds of thousands of people (or more) who may do business with its account holders. Like other companies (banks and non-banks), Coinbase owes no general duty of care to protect its customers' customers from alleged wrongdoing that may cause economic loss.

Rather than addressing the cases cited by Coinbase, Plaintiff asks the Court to ignore this body of law and proceed with a duty analysis based upon what Plaintiff refers to as principles of "generally applicable law." Opp. at 12. But under these principles, Plaintiff fares no better.

As the California Supreme Court held earlier this year (in a case relied on by Plaintiff), there is no general duty of care to protect third parties from unintentional economic loss. *In re S. Cal. Gas Leak Cases*, 7 Cal.5th 391, 398, 407, 414 (2019) (the "*Gas Leak Cases*"). Liability "in negligence for purely economic losses … is the exception, not the rule." *Id.* at 400. The "primary exception" to this no-duty rule is "where the plaintiff and the defendant have a special relationship … [and] the plaintiff was an intended beneficiary of a particular transaction." *Id.* For example, the court cited *Biakanja v. Irving*, 49 Cal.2d 647 (1958), in which an intended beneficiary of a will sued the errant drafter for negligence. But outside of those special relationships, merely invoking sympathy for plaintiffs and their alleged losses is not enough to create a duty of care. *Gas Leak Cases*, 7 Cal.5th at 394-95, 412-14; *see also id.* at 402 ("[P]urely

---

report is admissible and/or creates a triable issue as to breach, and reserves its right to argue, at a procedurally appropriate time, that Plaintiff has no admissible evidence on the element of breach.

6

economic losses flowing from a financial transaction gone awry … are primarily the domain of contract and warranty law or the law of fraud, rather than of negligence."). The court emphasized that economic loss claims, in contrast to personal injury claims, give rise to difficult line-drawing issues; in our inter-connected economy, "but for" causation can be associated with economic injuries that become more and more attenuated and remote. *Id.* at 402-06, 408-12.[7]

Under the guidance of the *Gas Leak Cases*, there is no basis for the Court to impose a duty of care on Coinbase. Like the *Gas Leak Cases*, this case: (1) involves a claim for purely economic loss; (2) does not involve any pre-existing "special relationship" – or any relationship of any kind – between the parties; and (3) does not involve any other special circumstance to justify departing from the rule that there is no duty of care to protect third parties from an unintentional economic loss. And, as in the *Gas Leak Cases*, the imposition of a duty here would raise difficult issues of line-drawing, as companies like Coinbase could face increasingly remote allegations of economic harm flowing from the asserted misconduct of their customers.

Plaintiff asks this Court to apply a multi-factor test based on earlier California cases. Opp. at 12-15. Even if that was appropriate (*see Gas Leak Cases*, 7 Cal.5th at 401 (cautioning that "whether to impose a duty of care turns on the sum total of the policy considerations at play, not a mere tallying of some finite, one-size-fits-all set of factors")), that test reinforces the conclusion that Coinbase does not owe a duty of care to Plaintiff.

First, courts applying the multi-factor test consider the extent to which the transaction was intended to affect the plaintiff. This factor strongly supports a determination that no duty is owed. The services that Coinbase provided pursuant to contract were intended to benefit only the parties: Cryptsy and Mr. Vernon paid Coinbase a fee for the exchange services that Coinbase provided, allowing Cryptsy and Mr. Vernon to use the dollars that they received for ordinary business expenses (for Cryptsy) and ordinary personal expenses (for Mr. Vernon).[8] In contrast to *Biakanja*, for example, where the plaintiff was plainly an intended beneficiary of the services the

---

[7] Florida law is similar. A claim for negligence based on economic loss cannot proceed in the absence of "some sort of link between the parties" or "some other extraordinary circumstances." *Tank Tech v. Valley Tank Testing*, 244 So. 2d 383, 393 (Fla. 2d Dist. Ct. App. 2018). There is no general duty to protect third parties from unintentional economic loss. *Id.*

[8] Mr. Vernon's personal account at Coinbase was linked to his personal bank account (shared at the time with his then-wife); Cryptsy's corporate account at Coinbase was linked to the company's corporate bank accounts. SUMF, ¶¶ 1-2.

7

defendant provided, the services that Coinbase provided here did not benefit, and were never intended to benefit, Plaintiff or any other Cryptsy account holder.

Second, the foreseeability of harm to the plaintiff factor also strongly supports a determination of no-duty. California courts have repeatedly held that foreseeability must be construed narrowly in economic loss cases. *See, e.g., Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 398 (1992) (foreseeability "may set tolerable limits for most types of physical harm" but "provides virtually no limit on liability for nonphysical harm."); *Thing v. La Chusa*, 48 Cal. 3d 644, 668 (1989) (noting on "clear judicial days," courts "can foresee forever"); *Software Design & Appl. v. Hoefer & Arnett*, 49 Cal. App. 4th 472 (1996) ("Creation of a legal duty requires more than a mere possibility of occurrence since, through hindsight, everything is foreseeable."). Consistent with that directive, the primary foreseeable harms that arise when a person deposits digital currency with an exchange, according to Plaintiff, relate to third-party hacking or other outside attacks on the exchange or account holder wallets. *See* Opp. at 2-4. The risk that the exchange owner will steal digital currency on deposit, which in hindsight may appear foreseeable in an abstract sense, is too remote from commonly identified risks to support a duty.

Third, the certainty the plaintiff suffered injury factor is neutral here since it is considered when the harm is emotional distress, not economic loss or physical harm. *Bily*, 3 Cal. 4th at 421.

Fourth, the closeness of the connection between the defendant's conduct and the plaintiff's injury factor strongly supports a no-duty determination. The immediate cause of Plaintiff's loss was the intentional, wrongful, and criminal theft committed by Cryptsy and Mr. Vernon. The alleged negligence of Coinbase was, at most, a secondary contributing factor to the loss (and as argued in the MSJ and below, it was not even a "but for" cause of Plaintiff's loss).

Fifth, the moral blame attached to defendant's conduct factor also strongly supports a determination of no-duty. The alleged facts give rise to a great deal of moral blame – and it falls on Mr. Vernon and Cryptsy. They are the thieves. Coinbase's unintentional conduct in not stopping the theft (as alleged) is unfortunate, but it does not merit moral blame or opprobrium.

Finally, the policy of preventing future harm and the costs associated with imposing a duty factors also strongly support a determination of no-duty. Innovation is the engine of the economy, and Coinbase is providing an innovative and highly valuable service. There is a high demand for Coinbase's services, and Coinbase has even been praised by law enforcement for helping prevent criminal activity. *See* Opp., Ex. RR (DE 112-29). To be sure, there is always a

8

risk that a criminal will try to abuse the services of any commercial actor – whether that is a burglar using a real estate marketplace website to case homes, a criminal using a mobile phone to defraud consumers in fake sales transactions, or Mr. Vernon using an Internet Service Provider to run a website that encouraged account holders to deposit their digital currency at Cryptsy – but the concern for preventing harm does not outweigh the costs associated with imposing a duty to protect non-customers from economic loss. No amount of scrutiny will prevent all criminal misconduct, and a decision by courts to impose overly broad duties would drive up costs and interfere with innovation and the delivery of new, useful, and desirable services to the public.

In sum, Coinbase owed no duty of care to Plaintiff. That conclusion is the same under (1) case law holding that financial institutions owe no duty of care to non-customers; (2) the general rule that there is no duty to protect third parties from unintentional economic loss; and (3) the multi-factor test set out in some cases. Because Coinbase owed Plaintiff no duty of care, Coinbase is entitled to summary judgment on the negligence claim as a matter of law.[9]

### B. Coinbase Did Not Cause The Alleged Harm.

Coinbase is also entitled to summary judgment on the negligence claim for a separate and independent reason: the alleged negligence was not the "but for" or legal cause of Plaintiff's claimed losses. MSJ at 16-17. Coinbase was not a part of the alleged theft, and even if Coinbase had discovered the alleged crimes and closed the accounts of Mr. Vernon and Cryptsy at an earlier date, Mr. Vernon still would have been able to steal Bitcoin and use other companies' exchange services to convert Bitcoin into dollars – as he did after Coinbase closed the accounts. *Id.* at 17; SUMF, ¶¶ 26-27. Moreover, Bitcoin does not need to be converted into dollars or fiat currency to have value, and given that Mr. Vernon allegedly fled to China, he could have used any number of exchanges in China to convert the Bitcoin into Chinese Yuan.

In his Opposition, Plaintiff limits his discussion of the causation issue to a single sentence, stating that a more robust investigation by Coinbase "would have revealed Cryptsy's

---

[9] With regard to negligence *per se*, the parties agree that Plaintiff cannot rely on such a theory to establish the existence of a duty. MSJ at 14-15; Opp. at 15 n.10. The parties also agree that the theory of negligence *per se* does not apply unless Plaintiff was in "the class of persons the statute was intended to protect." Opp. at 16. Here, the relevant AML statute was intended to assist federal law enforcement, not to protect Plaintiff or other individuals. MSJ at 15 (citing cases). Plaintiff disagrees (*see* Opp. at 16), but no case law supports his position. Again, Plaintiff asks this Court to go where no court has gone before and hold that a federal AML statute was intended to protect, and creates duties enforceable by, individual customers.

9

theft and put a stop to its/Vernon's conduct." Opp. at 16.  Plaintiff does not cite any evidence (or rebut the evidence that Coinbase presented), or offer even a theory as to how some additional investigation by Coinbase would have stopped Mr. Vernon's criminal activity.  Such rank, unsupported speculation does not create a triable issue on the element of causation.  For that reason alone, Coinbase is entitled to summary judgment on Plaintiff's negligence claim.

### III. SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNT FOUR (FOR UNJUST ENRICHMENT) BECAUSE IT IS DERIVATIVE OF THE OTHER CLAIMS.

On the unjust enrichment claim, equity does not require Coinbase to return the revenue it earned for providing exchange services to Cryptsy and Mr. Vernon, in arm's length transactions, on the same terms that it provided such services to other customers.  MSJ at 17-18.

Plaintiff's arguments here are identical to those he raises in support of his other claims: that because Coinbase knew of the alleged theft, or "should have" known under negligence law, it is unjust for Coinbase to retain the revenue it received.  Opp. at 18-20.  But, as described above and in the MSJ, Coinbase did not know of the alleged theft and is not liable for negligence.

In his Opposition, Plaintiff invokes California law rather than Florida law.  *Id.*  In California, however, an unjust enrichment claim requires some showing of a defendant's wrongdoing or other culpability.  *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1664 (1992).  It is (at most) a derivative claim.  *E.g., Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 922 (1985); *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010).  There is no standalone claim for unjust enrichment under California law.  *E.g., Melchior v. New Line Prods., Inc*. 106 Cal. App. 4th 779, 793 (2003); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 814 (N.D. Cal. 2011).

Because Coinbase is entitled to summary judgment on Counts One through Three, the Court should also enter summary judgment in favor of Coinbase on Count Four.

### CONCLUSION

For the foregoing reasons, and those stated in the MSJ, Coinbase respectfully requests that the Court enter summary judgment in its favor on all counts.

Respectfully submitted,

/s/ *Steven A. Ellis*
STEVEN A. ELLIS  (*admitted pro hac vice*)

sellis@goodwinlaw.com
GALEN A. PHILLIPS (*admitted pro hac vice*)
gphillips@goodwinlaw.com
GOODWIN PROCTER LLP
601 S Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

ANDREW KEMP-GERSTEL
Florida Bar No.  0044332
E-mail: akg@lgplaw.com
JAMES R.  LIEBLER II
Florida Bar No.  115348
E-mail: jrlii@lgplaw.com
LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Fax: (305) 379-9626

*Attorneys for Coinbase, Inc.*

11

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2019, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *James R. Liebler II*
JAMES R. LIEBLER II